UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN H. MORENO,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 14-cv-04902-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, , 17 |

## INTRODUCTION

Plaintiff Dawn H. Moreno ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 16, 17. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** the Commissioner's cross-motion for the reasons set forth below.

## BACKGROUND

Plaintiff is a 59-year-old woman with a twelfth grade education. AR 23, 205. She alleges a disability due to depression, mental illness, heart attack, and back problems. AR 23, 207.

On November 26, 1990, Plaintiff reported longstanding symptoms of depression and anxiety and requested refills of Xanax and Prozac. AR 293. Mental status examination findings indicated Plaintiff was neat and fully oriented, with tense and overwrought affect, no evidence of overt thought disorder or perceptual disturbance, and no suicidal ideation or plan. *Id.* Plaintiff's treatment provider noted Plaintiff appeared to have normal intelligence but her educational

background and work history suggested she was high functioning. *Id.*

On September 28, 1991, Plaintiff reported her panic attacks had returned secondary to the stress of divorce and death threats from her ex-husband. AR 286. Plaintiff reported that the actual attacks only lasted a few minutes, but she was uncomfortable for hours afterwards. *Id.* Plaintiff's treatment provider increased her clonazepam. *Id.* On October 8, Plaintiff said she had had only one panic attack since the prior visit, but she reported multiple symptoms of depression. AR 285. She was planning to get married on New Year's Eve. *Id.* Plaintiff reported that Prozac had worked for her, but she stopped using it because of bad publicity. *Id.* Plaintiff's treatment provider re-started Prozac and recommended decreasing clonazepam. *Id.* She failed to appear for several subsequent appointments. *Id.*

On January 15, 1992, Plaintiff reported she was married and pleased with that. AR 285. She reported no panic attacks. *Id.* On February 26, Plaintiff was doing well and "clearly feeling more 'up.'" *Id.* Her treatment provider continued Prozac and recommended decreasing Klonopin (clonazepam). *Id.* On April 15, Plaintiff reported being angry with her boss, but her treatment provider noted she was doing well on decreased Klonopin. AR 281. Plaintiff again reported doing well on May 20 and said she would try to decrease Klonopin further. *Id.* On July 22, Plaintiff was doing well, although she reported she was looking for another job. *Id.* Plaintiff's treatment provider decreased her Klonopin. *Id.* Plaintiff failed to appear for an appointment in August 1992. *Id.*

In January 1993, Plaintiff called seeking refills of her medication, but Plaintiff's treatment provider indicated she would not provide a refill until she saw Plaintiff again. AR 281. Plaintiff failed to appear for appointments in March and June of 1993; again, treatment notes stated that Plaintiff should not be given refills of her medications until she was seen by her provider. AR 279. On July 1, Plaintiff reported she was unemployed from her work as an engineer. *Id.* She requested a refill of her Prozac. *Id.* Upon examination, Plaintiff appeared tense and overwhelmed but direct and likeable, although she was living in a chaotic situation. *Id.* She denied any suicidal or homicidal ideation, denied alcohol or drugs, and had normal intelligence, insight within normal

2

1  limits, and judgment that appeared somewhat poor but was within normal limits. *Id.*

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

Plaintiff protectively filed for Disability Insurance Benefits ("DIB") on September 9, 2011, alleging disability since January 2, 2009. AR 110-16. She was insured for DIB through December 31, 1997. AR 21, 128. On September 12, 2011, Plaintiff amended her alleged onset date of disability to December 26, 1995. AR 117-18.

On September 12, 2011, the agency informed Plaintiff that she needed to file an application for Supplemental Security Income ("SSI") if she wanted the agency to determine whether she was eligible for SSI benefits. AR 199. The record indicates that Plaintiff refused to file for SSI over the phone. AR 137. On April 22, 2013, the agency informed Plaintiff that she needed to file an application for SSI before it could make a decision about whether she was eligible for SSI payments. AR 104-05. On April 23, the agency again informed Plaintiff that she needed to file an application for SSI before it could make a decision about whether she was eligible for SSI payments. AR 106-07. A report of contact dated June 12, 2013 notes that the agency attempted to contact Plaintiff to complete her SSI application on numerous occasions, but Plaintiff did not respond. AR 190. Plaintiff reported that she had completed the SSI application but was reluctant to file it. *Id.*

On November 7, 2011, the agency denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 51-54. Plaintiff subsequently filed a request for reconsideration, which was denied on May 2, 2012. AR 56-60. On May 19, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 61-62. ALJ Richard P. Laverdure conducted a hearing on December 13, 2012. AR 30-45. Plaintiff testified in person at the hearing.

**A.   Plaintiff's Testimony**

At the hearing, Plaintiff testified that she first started having panic disorders in 1991 or 1992. AR 33. She saw a therapist for over a year-and-a-half, and she did get better. AR 33-34. She started feeling "really bad" in 2004 and has not felt well since. AR 34. She could not drive

3

and was having problems taking care of her grandchildren while her daughter was in and out of jail. AR 36. Her insurance expired in 1997 and she had not been able to see her "real" doctor since. AR 34, 36. Plaintiff testified that she was only seeking benefits from the time she filed her application in 2011 because it was only since then that she had not felt well. AR 34-35.

**B.     The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b).

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c).

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt.

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d).

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e).

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv).

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Here, the ALJ determined at the first step that Plaintiff had not performed substantial gainful activity during the period from the alleged onset date of December 26, 1995, through the date last insured of December 31, 1997. AR 22. At the second step, the ALJ determined that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. As such, the ALJ determined that Plaintiff was not disabled, and he did

5

not proceed to the third step. AR 24.

## C. ALJ's Decision and Plaintiff's Appeal

On June 19, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 20-24. This decision became final when the Appeals Council declined to review it on September 19, 2014. AR 1-5. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On March 30, 2015, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 16. On April 27, 2015, the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 17.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

1    attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409
2    (2009)).

## DISCUSSION

In her Motion, Plaintiff does not argue that the ALJ committed legal error based on evidence of a disability. Instead, Plaintiff contends that the agency erred in amending her alleged onset date. Pl.'s Mot. at 2. Specifically, she argues that "[t]he [ALJ's] decision could not have been supported by substantial evidence because the Social Security Administrator had altered and tampered with the pertinent date of my original Application and failed to file my S.S.I. Application in its entirety." *Id.* She contends that the agency acted against her best interests by recommending she change the onset date from January 2, 2009 to December 26, 1995 for insurance purposes, when in reality the recommendation was "merely a means to 'sabotage' [her] Application, rending each and every decision 'unfavorable.'" *Id.* at 2-3.

The Court finds that Plaintiff's argument is without merit. The record shows that when Plaintiff filed her DIB application, she alleged an onset date of January 2, 2009. AR 110-16. However, because Plaintiff was only insured for DIB through December 31, 1997, she needed to prove she was disabled prior to that date. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("Appellant's insured status expired on September 30, 1992. To be entitled to disability benefits, Appellant must establish that her disability existed on or before this date."). Thus, as an alleged onset date of January 2, 2009 would render Plaintiff ineligible for DIB, the Court finds that the agency did not "sabotage" her application by recommending she amend the alleged onset date to December 26, 1995; rather, this recommendation helped preserve her eligibility for DIB. *See* Program Operations Manual System ("POMS") DI 25501.230 ("Amended Alleged Onset Date"), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425501230 (last visited May 14, 2015), § B.1 (describing field office role in determining alleged onset date and its responsibility to help a claimant "make an informed decision about onset"). Further, although Plaintiff contends that the agency should not have amended her alleged onset date, she has not indicated what she believes the correct onset date should be. As discussed above, Plaintiff's original alleged onset date of

7

1  January 2, 2009 would render her ineligible for DIB.

2  Regardless of the onset date, it is Plaintiff's burden to prove disability. *See* 20 C.F.R. § 404.1512(a); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) ("Claimant must produce complete and detailed objective medical reports of her condition from licensed medical professionals."). She must also meet the duration requirement by proving that any impairment or combination of impairments was significantly limiting for twelve consecutive months. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Even with the earlier onset date, the ALJ found that there were no medical signs or laboratory findings to establish a medically determinable impairment from December 26, 1995 through December 31, 1997. AR 24. However, the ALJ did not stop his inquiry there, but instead gave Plaintiff the benefit of the doubt and considered earlier treatment records. AR 23-24. The ALJ noted that the record indicated a history of sporadic subjective complaints of stress, panic attacks, depression, and anxiety. AR 23, 279, 281, 285-86, 293. Plaintiff testified that she had the first onset of her problems in 1991 or 1992. AR 33. However, as the ALJ noted, treatment notes largely consist of Plaintiff's subjective statements, which are insufficient to support a finding of disability on their own. AR 24; *see* 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.").

Furthermore, the few objective findings in the record do not substantiate a finding of disability. On November 26, 1990, mental status examination findings indicated Plaintiff was neat and fully oriented, with tense and overwrought affect, no evidence of overt thought disorder or perceptual disturbance, and no suicidal ideation or plan. AR 293. Plaintiff reported the return of panic attacks in fall 1991, but by early 1992, she consistently reported doing well with no panic attacks. AR 281, 285-86. The record indicates that Plaintiff failed to appear for several appointments. AR 279, 281, 285. In July 1993, Plaintiff appeared tense and overwhelmed but direct and likeable, although she was living in a chaotic situation. AR 279. She denied any suicidal or homicidal ideation, denied alcohol or drugs, and had normal intelligence, insight within normal limits, and judgment that appeared somewhat poor but was within normal limits. *Id*.

8

Given this record, the Court finds that the ALJ's decision is supported by substantial evidence.

Although Plaintiff may disagree with the ALJ's findings, she has failed to show that the ALJ's interpretation of the evidence was not reasonable. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Moreover, even if the Court were to find the evidence is susceptible to more than one rational interpretation, the ALJ's findings, if rational, must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The key question "is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Accordingly, because the ALJ's decision is supported by substantial evidence and free of legal error, it must be upheld. *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1071 (9th Cir. 2010) ("We must uphold an ALJ's decision so long as it is supported by substantial evidence and is not based on legal error"). [2]

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: May 14, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[2] Plaintiff also contends that the agency failed to file her application for Supplemental Security Income. Pl.'s Mot. at 23. However, it is Plaintiff's responsibility to file the application, and the record reflects that the agency informed her of this on multiple occasions. AR 104-07, 190, 199. *See* POMS SI 00601.010 ("Filing Applications"), available at https://secure.ssa.gov/poms.nsf/lnx/0500601010 (last visited May 14, 2015). Further, the record indicates that Plaintiff refused to file an SSI application over the phone (AR 137) and, as the ALJ noted, she stated to the disability examiner that she was "reluctant" file her SSI application (AR 20, 190).

9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN H. MORENO,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 14-cv-04902-MEJ<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 14, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Dawn H. Moreno
6330 Thornton Avenue
c/o Second Chance Homeless Shelter
Newark, CA 94560


Dated: May 14, 2015

                               Richard W. Wieking
                               Clerk, United States District Court

By:_____
Chris Nathan, Deputy Clerk to the
Honorable MARIA-ELENA JAMES